IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-135

 No. 514A20

 Filed 5 November 2021

 IN THE MATTER OF: J.B.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 18

 September 2020 by Judge J.H. Corpening II in District Court, New Hanover County.

 This matter was calendared for argument in the Supreme Court on 30 September

 2021 but determined on the record and brief without oral argument pursuant to Rule

 30(f) of the North Carolina Rules of Appellate Procedure.

 No brief filed for petitioner-appellee.

 No brief filed for appellee Guardian ad Litem.

 Richard Croutharmel for respondent-appellant father.

 HUDSON, Justice.

¶1 Respondent appeals from the trial court’s order terminating his parental rights

 in his minor child J.B. (Jeb).1 He challenges the four grounds for termination found

 by the trial court as well as the court’s conclusion that termination of his parental

 rights was in Jeb’s best interests. We conclude that the trial court’s findings

 supported its determination that respondent’s rights were subject to termination

 based on neglect and that the trial court did not abuse its discretion when deciding

 1 A pseudonym is used to protect the identity of the minor child and for ease of reading.
 IN RE J.B.

 2021-NCSC-135

 Opinion of the Court

 Jeb’s best interests. Accordingly, we affirm the termination order.

 I. Background

¶2 On 7 August 2019, Jeb’s mother (petitioner) filed a petition to terminate

 respondent’s parental rights to Jeb. Petitioner alleged that respondent had been

 incarcerated for several years after he was convicted of child molestation in Georgia.

 The victim was the daughter of a family friend, and the molestation occurred in the

 family home where petitioner, respondent, and Jeb resided. Petitioner sought to

 terminate respondent’s rights based on four grounds: neglect, failure to legitimate,

 dependency, and committing felony assault that resulted in serious bodily injury to

 another child in the home. See N.C.G.S. § 7B-1111(a)(1), (5), (6), (8) (2019).

¶3 The petition was heard on 3 August 2020. Petitioner testified that when she

 confronted respondent with the molestation allegations, he did not deny them but

 instead responded, “[t]hat’s not how it happened.” Petitioner then took Jeb and went

 to live with petitioner’s father in Wilmington; respondent was arrested a few weeks

 later. Petitioner identified the victim as the daughter of her best friend, who often

 came to visit for a few days at a time, and petitioner testified that one of the

 molestation incidents happened in Jeb’s presence. Petitioner also noted that under

 the terms of his Georgia criminal judgment, respondent would not be allowed to have

 contact with Jeb until Jeb turns eighteen and that respondent still faced additional

 charges in North Carolina. She explained that she was seeking termination of
 IN RE J.B.

 2021-NCSC-135

 Opinion of the Court

 respondent’s rights to ensure Jeb was protected from respondent.

¶4 Respondent also testified at the hearing. He explained that he agreed to enter

 an Alford plea in Georgia to mitigate against the risk of receiving a very long

 sentence. He also stated that he had taken classes in prison, including a sex offender

 prevention class, a motivation for change class, and a reentry class. Respondent

 acknowledged that he could not have contact or develop a relationship with Jeb until

 Jeb turns eighteen, but he also expressed his wish to retain his parental rights.

¶5 On 18 September 2020, the trial court entered an order terminating

 respondent’s parental rights. The court concluded that all four grounds for

 termination alleged by petitioner existed and that termination would be in Jeb’s best

 interests. Respondent appeals.

 II. Standard of Review

¶6 Termination-of-parental-rights cases consist of two phases. First, the trial

 court adjudicates the existence of the alleged grounds for termination under N.C.G.S.

 § 7B-1111. See N.C.G.S. § 7B-1109(e) (2019). The petitioner must prove by clear,

 cogent, and convincing evidence that one or more grounds for termination exist. In re

 A.U.D., 373 N.C. 3, 5–6 (2019). When reviewing the trial court’s adjudication of a

 ground for termination, we examine whether its findings of fact are supported by

 clear, cogent, and convincing evidence and whether those findings in turn support the

 trial court’s conclusions of law. In re E.H.P., 372 N.C. 388, 392 (2019). Unchallenged
 IN RE J.B.

 2021-NCSC-135

 Opinion of the Court

 findings are “deemed supported by competent evidence and are binding on appeal.”

 In re T.N.H., 372 N.C. 403, 407 (2019). The trial court’s conclusions of law are

 reviewed de novo. In re C.B.C., 373 N.C. 16, 19 (2019).

¶7 If the trial court determines that at least one ground for termination has been

 established, the case proceeds to the dispositional phase, where the court

 “determine[s] whether terminating the parent’s rights is in the juvenile’s best

 interest.” N.C.G.S. § 7B-1110(a) (2019). The court’s dispositional findings are binding

 on appeal if supported by any competent evidence. In re K.N.K., 374 N.C. 50, 57

 (2020). The trial court’s conclusion regarding the child’s best interests is reviewed for

 an abuse of discretion, and thus it is subject to reversal “where the court’s ruling is

 manifestly unsupported by reason or is so arbitrary that it could not have been the

 result of a reasoned decision.” In re M.A., 374 N.C. 865, 876 (2020) (cleaned up).

 III. Grounds for Termination

¶8 Respondent challenges all four grounds for termination found by the trial

 court. We begin by assessing the trial court’s determination that respondent’s rights

 were subject to termination based on neglect.

¶9 Under N.C.G.S. § 7B-1111(a)(1), parental rights may be terminated if the trial

 court finds that a parent has neglected their child to such an extent that the child fits

 the statutory definition of a “neglected juvenile.” A neglected juvenile is defined, in

 relevant part, as a juvenile “whose parent, guardian, custodian, or caretaker does not
 IN RE J.B.

 2021-NCSC-135

 Opinion of the Court

 provide proper care, supervision, or discipline; . . . or who lives in an environment

 injurious to the juvenile’s welfare.” N.C.G.S. § 7B-101(15) (2019).

 Termination of parental rights based upon this statutory
 ground requires a showing of neglect at the time of the
 termination hearing or, if the child has been separated
 from the parent for a long period of time, there must be a
 showing of a likelihood of future neglect by the parent.
 When determining whether such future neglect is likely,
 the district court must consider evidence of changed
 circumstances occurring between the period of past neglect
 and the time of the termination hearing.

 In re R.L.D., 375 N.C. 838, 841 (2020) (cleaned up). “[E]vidence of neglect by a parent

 prior to losing custody of a child—including an adjudication of such neglect—is

 admissible in subsequent proceedings to terminate parental rights[,]” but “[t]he trial

 court must also consider any evidence of changed conditions in light of the evidence

 of prior neglect and the probability of a repetition of neglect.” In re Ballard, 311 N.C.

 708, 715 (1984).

¶ 10 Here, the trial court found the following with respect to neglect:

 6. That on or about December 2013, Petitioner
 discovered that Respondent Father had repeatedly
 molested and engaged [in] inappropriate behavior with a
 minor child. The behavior occurred in their home and the
 home of the minor child.

 7. That [Petitioner] confronted the Respondent-
 Father but he did not deny the allegations against him. In
 fact, all he replied was “that’s not how it happened.” This
 made [Petitioner] feel sick and she began packing to leave
 with the minor child.
 IN RE J.B.

 2021-NCSC-135

 Opinion of the Court

 8. That the Respondent-Father has neglected the
minor child by failing to provide proper care, supervision
or discipline for him and allowed him to live in an
environment injurious to his welfare. That the
Respondent-Father molested another juvenile who was
present in his home, and on several occasions, [Jeb] was in
the same bed during the molestation.

 9. That Respondent-Father entered an Alford Plea
to child molestation and was convicted. A child molestation
charge in Georgia would be prosecuted under a different
statute in North Carolina. A person who commits the
offense of aggravated child molestation in Georgia requires
that an act physically injures the child or involves an act of
sodomy. While this charge is substantially similar to
Felony Assault that results in bodily injury, the conviction
of the crime in North Carolina would require the individual
register as a Sex Offender in North Carolina. It is noted
that charges in North Carolina are forthcoming. Within the
meaning of N.C.G.S. § 7B-1111(a)(8), Respondent-Father’s
child molestation is substantially similar to felony assault
that results in serious bodily injury to the child.

 10. That during the past four years since being apart
from the minor child, Respondent-Father has not inquired
about the health, physical or emotional well-being of the
Juvenile. That Respondent-Father failed to attempt to
contact Juvenile, failed to write or send cards to Juvenile
on birthdays or other special occasions. [Jeb] has not
received birthday gifts, or Christmas gifts from
Respondent-Father. That Respondent-Father faces
charges in New Hanover County that will likely prevent
him from properly caring for and providing supervision of
minor child for the foreseeable future.

 11. In the event that legal custody would be restored
to Respondent-Father, there would be the likelihood of
repetition of neglect. That the conduct of the Respondent-
Father has been such as to demonstrate that he will not
promote the Juvenile’s health, physical and emotional well-
 IN RE J.B.

 2021-NCSC-135

 Opinion of the Court

 being. Respondent-Father demonstrated this through his
 conduct with the juvenile girl he molested in the same
 home as, and in the presence, of [Jeb].

 12. Respondent-Father also faces uncertainty about
 charges in New Hanover County and it is likely that he will
 continue to be unable to provide proper care and
 supervision of the minor child due to these charges. It is in
 the best interests of [Jeb] that the parental rights of
 [Respondent] be terminated.

 13. Respondent-Father neglected the minor child in
 that [Jeb] did not receive proper care, supervision, or
 discipline as detailed in the preceding paragraphs of the
 Findings of Fact in this Order. Sufficient improvements in
 parenting have not been made in order to justify that safe
 placement would ever be possible with Respondent-Father.

 Respondent challenges various portions of these findings as unsupported by the

 evidence.

¶ 11 First, respondent challenges the trial court’s findings of fact 6, 7, and 8, in

 which the trial court discussed his past neglect. He contends that his Alford plea was

 insufficient to establish that he actually molested a child, that there was no evidence

 he failed to deny the allegations against him when confronted by petitioner, and that

 there was no evidence that the molestation occurred while Jeb was in the same bed.

¶ 12 These challenged findings were consistent with petitioner’s testimony. She

 testified that respondent was arrested for child molestation, that the victim was the

 daughter of her best friend, and that when she confronted respondent, he did not deny

 the allegations but instead stated, “[t]hat’s not how it happened.” She also stated that
 IN RE J.B.

 2021-NCSC-135

 Opinion of the Court

 the offenses that formed the basis for respondent’s charges in Georgia happened in

 their family home, including one occasion where Jeb was also present. She further

 testified:

 I believe that he was grooming [the victim] the whole
 time—our whole relationship. And then, with the incidents
 that happened in Georgia, [Jeb] was in the bed during the
 snuggle times, and that concerns me that he was in the
 same room as the things—whatever was happening was
 happening.

 Based on this testimony, the trial court could reasonably infer that petitioner engaged

 in repeated child molestation and that at least one incident occurred while Jeb was

 in the same bed. See In re D.L.W., 368 N.C. 835, 843 (2016) (recognizing the trial

 court’s “responsibility to pass upon the credibility of the witnesses and the weight to

 be given their testimony and the reasonable inferences to be drawn therefrom”

 (cleaned up)). However, we agree with respondent that the evidence does not support

 the trial court’s finding that the molestation occurred while Jeb was present “on

 several occasions,” and we therefore disregard that portion of finding of fact 8. See In

 re S.M., 375 N.C. 673, 684 (2020). Respondent’s challenges to findings of fact 6

 through 8 otherwise fail.

¶ 13 Respondent also challenges finding of fact 9 to the extent that it suggests he

 was convicted of aggravated child molestation. The finding begins by specifically

 stating that “Respondent-Father entered an Alford Plea to child molestation and was

 convicted[,]” a statement respondent’s objection appears to concede is true. The
 IN RE J.B.

 2021-NCSC-135

 Opinion of the Court

 remainder of the finding, which discusses the legal similarities between a Georgia

 conviction for aggravated child molestation and a North Carolina conviction for felony

 assault inflicting serious bodily injury, applied to the trial court’s adjudication under

 N.C.G.S. § 7B-1111(a)(8) but was not applicable to the neglect ground under N.C.G.S.

 § 7B-1111(a)(1); thus, we do not address respondent’s challenge to it here. See In re

 N.G., 374 N.C. 891, 900 (2020) (this Court limits its “review to those challenged

 findings that are necessary to support the trial court’s determination that . . . parental

 rights should be terminated”). Taken together, the trial court’s findings of fact 6

 through 9 provide evidence of past neglect by respondent that the trial court could

 consider as part of its adjudication of the neglect ground. See In re Ballard, 311 N.C.

 at 715; N.C.G.S. § 7B-101(15) (“In determining whether a juvenile is a neglected

 juvenile, it is relevant whether that juvenile lives in a home . . . where another

 juvenile has been subjected to abuse or neglect by an adult who regularly lives in the

 home.”).

¶ 14 Next, respondent challenges findings of fact 11, 12, and 13, which together

 reflect the trial court’s ultimate determination that there would be future neglect if

 Jeb was returned to respondent’s care. Respondent argues that there is no possibility

 of future neglect because under the terms of his probation, he is not allowed to have

 any contact with Jeb until he reaches the age of majority. We rejected a similar

 argument in In re J.S., a case in which the respondent-father, who was serving a
 IN RE J.B.

 2021-NCSC-135

 Opinion of the Court

 twenty-eight year prison sentence, argued

 that since he will be incarcerated for the next twenty-eight
 years, it is neither likely nor probable that the children will
 be in his care again during their minority, and such “an
 extremely remote possibility . . . does not support a
 conclusion that neglect during physical care and custody of
 the children is likely to recur.”

 In re J.S., 377 N.C. 73, 2021-NCSC-28, ¶ 20 (alteration in original). In responding to

 this claim, we noted that “the extent to which a parent’s incarceration or violation of

 the terms and conditions of probation support a finding of neglect depends upon an

 analysis of the relevant facts and circumstances, including the length of the parent’s

 incarceration.” Id., ¶ 21 (cleaned up). We concluded that the respondent’s “lengthy

 incarceration implicates a future likelihood of neglect, as respondent cannot provide

 ‘proper care, supervision, or discipline’ while he is incarcerated, N.C.G.S. § 7B-

 101(15), and while not the only factor, is a relevant and necessary consideration in

 the trial court’s finding of neglect.” Id., ¶ 22. Thus, while a lengthy period of

 incarceration (or in this case, probation) cannot be the sole basis for a determination

 that future neglect is likely, it is a highly relevant factor. So long as other factors

 which also implicate a likelihood of future neglect are present, the trial court was

 permitted to use respondent’s inability to contact Jeb for the rest of his childhood to

 reach its determination that neglect existed as a ground for termination.

¶ 15 The trial court’s order reflects another factor supporting a likelihood of a

 repetition of neglect was present in this case. Specifically, the trial court found in
 IN RE J.B.

 2021-NCSC-135

 Opinion of the Court

 finding of fact 10 that respondent never “inquired about the health, physical or

 emotional well-being” of Jeb at any point during the four years between his arrest

 and the termination hearing. Respondent concedes that this finding is accurate but

 argues that it fails “to account for Respondent’s inability to maintain some sort of

 relationship with Jeb or even inquire as to his wellbeing where Respondent was not

 willfully refusing to do so.”

¶ 16 Respondent is correct that his criminal judgment in Georgia included, as a

 term of probation, the following prohibition:

 Contact with minors. You shall have no contact, whether
 directly in person or indirectly through any means of
 communication, with any child under the age of eighteen
 (18), including your own children, nor with any person
 unable to give consent because of mental or emotional
 limitations. Neither shall you attempt contact with the
 aforementioned except under circumstances approved in
 advance and in writing by the Court. If you have incidental
 contact with children, you will be civil and courteous to the
 child and immediately remove yourself from the situation.
 You will discuss the contact at your next meeting with your
 Probation Officer.

 But while this provision precludes respondent from having either direct or indirect

 contact with Jeb, it did not absolve him of all of his parenting responsibilities for the

 remainder of Jeb’s childhood. This Court has previously explained that a situation

 like extended incarceration

 does not negate a father’s neglect of his child because the
 sacrifices which parenthood often requires are not forfeited
 when the parent is in custody. Thus, while incarceration
 IN RE J.B.

 2021-NCSC-135

 Opinion of the Court

 may limit a parent’s ability to show affection, it is not an
 excuse for a parent’s failure to show interest in a child’s
 welfare by whatever means available.

 In re S.D., 374 N.C. 67, 76 (2020) (cleaned up). In this case, it is undisputed that

 respondent failed to show interest in Jeb’s welfare by whatever means available. The

 prohibition against contact with Jeb did not forbid respondent from seeking

 information about Jeb’s welfare through his family or other means, but he failed to

 even attempt to find a way to learn about Jeb’s wellbeing. Respondent’s total inaction

 was properly considered by the trial court in adjudicating the existence of the neglect

 ground. See id. (upholding an adjudication of neglect as a ground for termination in

 part because the “respondent-father made minimal efforts to show interest in [his

 minor child] while incarcerated, sending just a single birthday card to her after the

 trial court advised him that ‘he may send any mail or gifts to [the minor child]

 through the social worker’ and after [the petitioner] encouraged him to do so”).

¶ 17 By conceding that he is “precluded from having contact with any minors

 whatsoever until 2037,” respondent necessarily also concedes that he will be unable

 to provide care for Jeb for the remainder of his minority, regardless of whether

 respondent is convicted of further crimes. As a result, like the respondent-father in

 In re J.S., he necessarily cannot provide Jeb with “proper care, supervision, or

 discipline,” even if he is released from prison after the completion of his Georgia

 sentence. In re J.S., 2021-NCSC-28, ¶ 22. Combined with respondent’s failure to
 IN RE J.B.

 2021-NCSC-135

 Opinion of the Court

 make any effort to show an interest in Jeb’s welfare for more than four years

 preceding the termination hearing, the trial court had a sufficient basis to determine

 that there was a likelihood of future neglect in this case. See id., ¶ 23.

¶ 18 Consequently, the trial court properly determined that respondent’s parental

 rights were subject to termination based on neglect. Since we have concluded this

 ground has ample support in the trial court’s findings, we need not address

 respondent’s arguments as to the remaining termination grounds found by the trial

 court under N.C.G.S. § 7B-1111(a)(5), (6), and (8). See In re A.R.A., 373 N.C. 190, 194

 (2019) (“[A] finding of only one ground is necessary to support a termination of

 parental rights . . . .”).

 IV. Best Interests Determination

¶ 19 Respondent also argues that the trial court erred by concluding that

 termination of his parental rights was in Jeb’s best interests. Under N.C.G.S. § 7B-

 1110, a court making a best interests determination

 shall consider the following criteria and make written
 findings regarding the following that are relevant:

 (1) The age of the juvenile.

 (2) The likelihood of adoption of the juvenile.

 (3) Whether the termination of parental rights will aid
 in the accomplishment of the permanent plan for the
 juvenile.

 (4) The bond between the juvenile and the parent.
 IN RE J.B.

 2021-NCSC-135

 Opinion of the Court

 (5) The quality of the relationship between the juvenile
 and the proposed adoptive parent, guardian,
 custodian, or other permanent placement.

 (6) Any relevant consideration.

N.C.G.S. § 7B-1110(a). In this case, the trial court made the following findings

regarding Jeb’s best interests:

 22. That [Jeb] currently lives with [Petitioner] in
 their home. He has lived there since late July of 2016.
 [Petitioner] is committed to ensuring [Jeb] is well cared for
 and happy. All of minor child’s needs are being met. [Jeb]
 is healthy, well-adjusted and in a stable environment.

 23. That the Attorney Guardian ad Litem, Mark J.
 Ihnat found [Petitioner] providing a stable environment
 and attentiveness to [Jeb]’s needs. [Petitioner] has
 provided him with a spacious and well-appointed home.
 [Jeb] is an active child who has access to his toys and
 various activities. Juvenile has a strong relationship with
 [Petitioner] and his maternal grandparents.

 24. That the Juvenile is six years old and needs
 consistency and stability. That the Guardian ad Litem
 recommended to the Court that it was in the best interests
 of [Jeb] that the parental rights of Respondent-Father be
 terminated. Currently, [Petitioner] is committed to caring
 for [Jeb] and engaged in his educational, social and medical
 well-being. The termination of the parental rights of
 [Respondent] would allow [Jeb]’s well-being to continue.

 ....

 27. That the minor child has not seen nor heard from
 Respondent-Father since he was a toddler. There is no
 close bond between Juvenile and Respondent-Father due
 to Respondent-Father’s incarceration. [Jeb] does not
 IN RE J.B.

 2021-NCSC-135

 Opinion of the Court

 inquire about his father. He [is] well-adjusted and happy.

 28. While the Respondent-Father cares for [Jeb], the
 Court finds termination of parental rights is in the best
 interests of the minor child at this time. Termination of
 parental rights will aid in the additional stability and
 permanence of [Jeb]’s life and well-being.

¶ 20 Respondent challenges two of these findings. He contends that findings of fact

 24 and 28 are unsupported to the extent that they suggest that Jeb lacked consistency

 and stability and that termination would aid in additional consistency and stability.

 He also contends that these findings do not adequately take into consideration the

 fact that there was no pending adoption for Jeb. Respondent believes that, since Jeb

 is currently in a stable, permanent placement, termination would not result in any

 changes for him, and “[t]he trial court’s best interest determination was therefore

 based on nonexistent justifications.”

¶ 21 The only evidence presented during the dispositional phase of the hearing was

 a report prepared by Jeb’s guardian ad litem. In his report, the guardian ad litem

 stated that “[i]f the [termination of parental rights] were granted, [Jeb] would be

 afforded additional stability and permanence.” The trial court’s challenged findings

 of fact are consistent with the guardian ad litem’s statement. In proper context, the

 court’s findings reflect that Jeb will need continued stability and permanence in the

 future and that termination would provide additional aid towards that goal.

¶ 22 Moreover, the lack of a potential adoptive second parent for Jeb was irrelevant.
 IN RE J.B.

 2021-NCSC-135

 Opinion of the Court

 As we have previously explained, “the trial court need not find a likelihood of adoption

 in order to terminate parental rights.” In re C.B., 375 N.C. 556, 561 (2020); see also

 In re A.R.A., 373 N.C. at 200 (“[T]he absence of an adoptive placement for a juvenile

 at the time of the termination hearing is not a bar to terminating parental rights.”

 (alteration in original) (quoting In re D.H., 232 N.C. App. 217, 223 (2014))).

¶ 23 The trial court’s order reflects that it considered the relevant factors under

 N.C.G.S. § 7B-1110(a), and the trial court’s conclusion that terminating respondent’s

 parental rights was in Jeb’s best interests was neither manifestly unsupported by

 reason nor so arbitrary that it could not have been the result of a reasoned decision.

 See In re M.A., 374 N.C. at 876. We therefore hold there was no abuse of discretion in

 the trial court’s conclusion that termination of respondent’s parental rights was in

 his son’s best interests.

 V. Conclusion

¶ 24 The trial court made sufficient findings of fact, supported by clear, cogent, and

 convincing evidence, to establish that respondent previously neglected Jeb by

 molesting another child in his presence and that respondent would be unable to

 provide proper care and supervision to Jeb in the future. Accordingly, we hold the

 trial court properly concluded that respondent’s parental rights were subject to

 termination based on neglect under N.C.G.S. § 7B-1111(a)(1).

¶ 25 The trial court also made sufficient findings, supported by competent evidence,
 IN RE J.B.

 2021-NCSC-135

 Opinion of the Court

to support its discretionary determination that termination was in Jeb’s best

interests. We affirm the termination order.

 AFFIRMED.